Filed 5/17/23  P. v. Suarez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080338 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD225416) |
| JORGE LUIS SUAREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Desiree A. Bruce-Lyle, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman, and Alan L. Amann, Deputy Attorneys General for Plaintiff and Respondent.

Jorge Luis Suarez appeals an order denying his petition for resentencing under former Penal Code section 1170.95 (now section 1172.6)[1] based on changes to the felony murder rule and the natural and probable consequences doctrine (Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019)). He contends the superior court erred by relying on the summary of the evidence contained in this court's prior opinion on his direct appeal (*People v. Suarez* (Nov. 8, 2012) D059907 [nonpub. opn.]), improperly weighing the evidence, and making a finding of fact—that he was the actual shooter involved in an attempted murder—contrary to the jury's not true findings on his personal use of a firearm—so as to deny his petition without issuing an order to show cause. The People concede error. They maintain the error was harmless however, because the jury instructions, the jury's verdicts, and counsels' arguments[2] establish that Suarez was necessarily convicted of attempted murder as a direct aider and abettor who acted with express malice.

We agree that to the extent the lower court relied on this court's prior opinion to find Suarez was the actual perpetrator of the attempted murder, it erred. But we conclude the error was harmless as other parts of the record of conviction demonstrate Suarez is ineligible for section 1172.6 relief as a

---

[1]     Undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We refer to the statute throughout as section 1172.6.

[2]     This court granted Suarez's and the People's requests to judicially notice our prior opinion in Suarez's direct appeal, as well as portions of the record in that appeal reflecting the jury instructions, verdicts and counsels' closing and rebuttal arguments. We notified the parties that on our own motion, we would take judicial notice of the record in the prior appeal, *People v. Suarez*, *supra*, D059907. (Evid. Code, §§ 452, 459.)

matter of law. We therefore affirm the order denying Suarez's section 1172.6 petition for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts*

Our opinion in *People v. Suarez, supra*, D059907 set forth the facts underlying Suarez's convictions. Suarez does not repeat them in his opening brief, stating that because the court denied his petition without an evidentiary hearing, there was no new evidence presented in connection with his petition. The People set out the underlying facts from our opinion. We repeat some of them verbatim.

On the day of the incident, five girls, including M.H. and J.A., became engaged in a fight after two of the girls accused the others of discussing a local gang. Afterwards, M.H., J.A. and J.A.'s friend returned to the gated apartment of M.H.'s mother, C.M. About an hour later, the other girls involved in the fight returned, then "Suarez and another man drove up to the apartment building and got out of their cars. Suarez, known as 'Grifo,' was short, heavyset, and wore a black-and-white flannel shirt. His head was shaved and he had a gang tattoo covering the back of it. He also had gang tattoos on the back of his hands. [C.M., M.H. and J.A.] recognized him from the neighborhood. The other man, known as 'Flaco,' was tall and skinny and wore a football team jersey." (*People v. Suarez, supra*, D059907.)

Suarez and Flaco "followed a tenant through the building's security gate. [C.M.] ordered them out of the building and threatened to call the police. Suarez yelled, 'Southeast Lokos' and other gang references. He said he was going to shoot up their home because of their encounter with his 'homegirl.'

3

"Suarez then put his hands in his pants toward his buckle and began to pull his hand out as if he was getting a gun out of his waistband. As [C.M.] turned to scream for [her younger] children to run, Suarez raised his arm in front of his body and pointed up toward where [C.M., M.H. and J.A.] were standing. There was a bright orange muzzle flash from the location of Suarez's hand and the sound of a gunshot. The flash obscured Suarez's face.

"After seeing the flash, [C.M.] turned to leave and heard three more shots while moving away. [M.H.] saw two flashes and heard two gunshots. When she turned to run, she heard two more gunshots. After the fourth gunshot, a neighbor opened her door and let [C.M.] and her children in. Suarez and Flaco ran to their cars and drove away.

"At some point during the incident, [J.A.] saw a gun in Suarez's hand and [C.M.] saw a gun in Flaco's hand. A neighbor watched the confrontation from his doorway. He saw a heavyset man with a tattoo on the back of his shaved head pull out a gun and shoot three to four times at [C.M.], following her as she was trying to get away.

"A man who lived across the street from the apartment building heard the commotion and noticed two men in their mid-to-late 20's with shaved heads in front of the building. One wore a gray-and-black flannel shirt and the other wore a football jersey. The man in the football jersey pulled out a black, semiautomatic handgun, shot four times at the apartment building, and then both men ran away.

"Police officers recovered four nine-millimeter caliber casings. They also found four bullet holes on the second floor of the apartment building. One was in front of a metal bar where [C.M.] had been standing, one was where [M.H.] had been standing, one was in front of an apartment, and one was on the lower window close to [C.M.]'s apartment.

4

[C.M.] and [M.H.] each identified Suarez as the shooter from photographic lineups shown to them. [J.A.] was not able to identify anyone from the photographic lineup shown to her. Shortly after the shooting, before the photographic lineups, [C.M., M.H. and J.A] viewed the Southeast Lokos gang's page on a social networking website and saw photographs of Suarez, Flaco, [the two other girls involved in the fight], and other gang members not involved in the shooting." (*People v. Suarez, supra*, D059907.)

In his defense, Suarez presented a neurophysiologist who testified about "factors potentially impacting a person's ability to accurately observe and identify another person . . . ." (*People v. Suarez, supra*, D059907.) He also called as a witness the tenant who opened the gate for the perpetrators, who "testified the shooter had a tattoo across the back of his head" but that "she did not believe Suarez was the shooter because the shooter was a thinner, younger man. Another tenant testified one of the male perpetrators wore a white T-shirt and dark jeans and the other wore a dark-hooded sweatshirt with the hood pulled up over his head. She initially testified she could not tell which man was the shooter, but later testified the man in the white T-shirt seemed to be the shooter." (*People v. Suarez, supra*, D059907.)

B. *Charges and Convictions*

The People charged Suarez in an amended information with three counts of willful, deliberate and premeditated attempted murder (§§ 187, subd. (a), 189, 664; counts 1-3), assault with a semi-automatic firearm (§ 245, subd. (b); counts 4, 5, 6) and shooting at an inhabited dwelling (§ 246; count 7). They alleged as to all counts that Suarez committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal gang conduct within the meaning of section 186.22, subdivision (b)(1). As to counts

5

1 through 3 the People alleged Suarez was a principal and at least one principal used and discharged a firearm (§ 12022.53, subds. (c), (e)(1)). As to counts 1 through 6, the People alleged Suarez personally used a firearm in the commission or attempted commission of the offenses (§ 12022.5, subd. (a)).

In 2011, a jury convicted Suarez of the three counts of willful, deliberate, premeditated attempted murder and found true the allegations the offenses were committed for the benefit of a criminal street gang. The jury also found true the allegations that Suarez was a principal in the offenses and at least one principal discharged a firearm.[3] The jury found not true the allegations Suarez personally used a firearm in counts 1 through 3. It found Suarez not guilty of counts 4 through 7: the assault and shooting at an inhabited dwelling charges and their accompanying allegations. The court sentenced Suarez to seven years to life for the first count of attempted murder plus 20 years for the attendant firearm enhancement. It sentenced

---

[3]     As to these allegations, the jury was instructed: "If you find the defendant guilty of the crimes charged in counts 1, 2, and/or 3 and you find that the defendant committed those crimes for the benefit of, at the direction of or in association with a criminal street gang with the intent to promote, further, or assist in any criminal conduct by gang members, you must then decide whether for each crime the People have proved the additional allegation that one of the principals personally and intentionally discharged a firearm during that crime. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime. [¶] To prove this allegation, the People must prove that: [¶] 1. Someone who was a principal in the crime personally discharged a firearm during the commission of the attempted murder; and [¶] 2. That person intended to discharge the firearm. [¶] A person is a principal in a crime if he or she directly commits the crime or if he or she aids and abets someone else who commits the crime. As this allegation only applies to attempted murder, the defendant must have the intent to kill."

6

him to identical concurrent terms for the second and third counts of attempted murder.

C. *Petition for Resentencing*

In 2019, Suarez, representing himself, filed a form petition for resentencing under now section 1172.6. By checking boxes, he alleged a complaint or information was filed against him that allowed the prosecution to proceed under the theory of felony murder or murder under the natural and probable consequences doctrine, and at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine. In part, he alleged he "could not now be convicted of [first] degree felony murder because of changes to . . . [section] 189 . . . for the following reasons . . . [¶] . . . I was not the actual killer. [¶] I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree. [¶] I was not a major participant in the felony <u>or</u> I did not act with reckless indifference to human life during the course of the crime or felony." He alleged he "could not be now convicted of [second] degree murder or attempted murder under the natural and probable consequences doctrine or of murder under the [second] degree felony murder doctrine because of changes to [section] 188 . . . ." Suarez asked the court to appoint him counsel.

In an initial response, the People argued Suarez had not shown prima facie he came within the provisions of the resentencing statute as he had been convicted of attempted murder.

Suarez renewed his petition in November 2021 after the court ruled it lacked jurisdiction over the matter because Suarez's first petition had not been filed. In addition to the previous allegations, Suarez alleged he "could not now be convicted of [first] or [second] degree murder because of changes

7

made to [sections] 188 and 189 . . . ." The People responded that because Suarez had been convicted of attempted murder, the court should deny his petition.

The court invited the parties to submit further briefing in view of the amendments to section 1172.6 by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021 ch. 551, § 2), which effective January 1, 2022, permitted petitioners to seek resentencing for attempted murder convictions. It appointed counsel for Suarez.

Thereafter, the People in their supplemental response argued that despite the 2022 amendments to section 1172.6, Suarez did not fall within the statute's provisions; he was not an accomplice to the attempted murder for which he was convicted but was the "actual attempted murderer." Pointing to this court's appellate opinion in Suarez's direct appeal, the People argued Suarez "demonstrated an intent to kill and therefore has established beyond a reasonable doubt to have acted with the malice required under amended sections 188 or 189."

Using habeas corpus proceedings as an analogy, Suarez in reply argued his petition, assuming the truth of its allegations, established a prima facie case for relief. He argued the court in assessing his petition was not to evaluate the credibility of its factual assertions, but was only permitted to discredit those assertions that were "untrue as a matter of law." Suarez argued it was the People's burden to prove the specific theory on which he was convicted, and absent that, the court was required to issue an order to show cause.

After considering arguments of counsel, the court denied Suarez's 1172.6 petition. Citing *People v. Cortes* (2022) 75 Cal.App.5th 198, it explained: "While attempted murder is now an enumerated offense eligible

8

for potential relief under [section 1172.6], if a petitioner was convicted of attempted murder as either the actual perpetrator or as a direct aider and abettor, the petitioner is ineligible for relief. [Citation.] A petitioner must make a prima facie showing they were convicted of attempted murder under the natural and probable consequences doctrine to obtain relief under [section 1172.6]. [Citation.] If a jury was not instructed under any theory in which malice could have been imputed to the petitioner, like the natural and probable consequences doctrine, the petitioner is ineligible for relief." Stating it "relied on the record of conviction, including [this court's opinion] and the trial court file, as well as argument presented at the prima facie hearing,"[4] the court stated the "relevant facts . . . as summarized by the Court of Appeal opinion, demonstrate that, after an altercation, [Suarez] told victims he would 'shoot up their home,' and then he personally fired a gun at the victims three to four times. [Citation.] [Suarez] then fled the scene. [Citation.] Consequently [Suarez] was convicted of willful, deliberate and premeditated attempted murder as the actual shooter following a jury trial. . . . [¶] Accordingly, the record of conviction makes clear [Suarez] was not convicted of attempted murder as an accomplice under the natural and probable consequences doctrine, required to obtain relief under [s]ection [1172.6] after the enactment of Senate Bill No. 775. Rather, [Suarez] was convicted of attempted murder as the actual perpetrator, acting with premeditation and deliberation. Consequently, [Suarez] acted with the specific intent to kill,

---

[4]     In part, the court reasoned: "Pursuant to *People v. Lewis* (2021) 11 Cal.5th 952, the court may rely on the record of conviction, including the appellate opinion, at the prima facie stage of the proceeding. While, similar to a petition for writ of habeas corpus, the court must take the petitioner's allegations as true, if the record of conviction contains facts that refute the petitioner's assertions, the court is justified in making findings adverse to the petitioner."

and, thus acted with express malice." Based on *Cortes*, 75 Cal.App.5th 198, it ruled Suarez was ineligible for relief as a matter of law.

Suarez appeals from the court's order.

DISCUSSION

I. *Legal Principles*

Senate Bill No. 1437, effective January 1, 2019, "amend[ed] the felony[-]murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).) With a narrow exception for peace officer victims (§ 189, subd. (f)), the Legislature effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, subd. (a)(3), 189, subd. (e); see *Strong*, at pp. 707-708.) Specifically, the Legislature amended section 188 to require that, except in cases of first degree felony murder, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Brown* (2023) 14 Cal.5th 453, 468, fn. 7; *People v. Guiffreda* (2023) 87 Cal.App.5th 112, 122.)

The Legislature later amended section 1172.6 to expand its coverage to individuals convicted of "attempted murder under the natural and probable

10

consequences doctrine." (§ 1172.6, subd. (a);[5] *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.) That bill, Senate Bill No. 775, was signed into law on October 5, 2021. (*Saibu*, at p. 747.)

The Legislature created a procedural mechanism for those convicted under the former law to seek retroactive relief under the amended law. (§ 1172.6, subd. (a); *Strong, supra*, 13 Cal.5th at p. 708.) "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 . . . .'" (*Ibid.*, fn. omitted.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Ibid.*)

---

5     "A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced." (§ 1172.6, subd. (a).) Senate Bill No. 775 clarified that " 'persons who were convicted of attempted murder . . . under . . . the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theor[y].' " (Stats. 2021, ch. 551, § 1, subd. (a).) Senate Bill No. 775 also clarified that the burden of proof at a section 1172.6 hearing is beyond a reasonable doubt and a trial court's finding that there is substantial evidence to support a conviction is insufficient to meet this burden. (§ 1172.6, subd. (d)(3).) "In addition, the bill clarified the standards for the admissibility of evidence at the evidentiary hearing." (*People v. Patton* (2023) 89 Cal.App.5th 649, 656.)

The trial court in conducting the prima facie inquiry may properly examine the record of conviction "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Patton*, *supra*, 89 Cal.App.5th at p. 656.) But its inquiry is limited: " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Harden* (2022) 81 Cal.App.5th 45, 51; *Patton*, at p. 657.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, at p. 972; *Harden,* at p. 51 [" '[T]he trial court should not decide unresolved factual issues[ ] that involve credibility determinations or weighing of evidence' "].)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petition is ineligible for relief *as a matter of law*." (*People v. Harden*, *supra*, 81 Cal.App.5th at p. 52.) " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v Lewis*, *supra*, 11 Cal.5th at p. 971; *Harden*, at p. 52; *Patton*, at p. 656.) "For example, if the record shows that the jury was not instructed on either the natural and probable consequences

or felony-murder doctrines, then the petitioner is ineligible for relief as a matter of law." (*Harden*, at p. 52.)[6]

Reviewing a determination of a defendant's eligibility on appeal, the trial court's reasoning is irrelevant, as we may affirm a ruling that is correct on any ground. (*Harden*, at p. 60, fn. 13, citing *People v. Brooks* (2017) 3 Cal.5th 1, 39; *People v. Cortes*, *supra*, 75 Cal.App.5th at p. 204.)

## II. *The Superior Court Erred to the Extent It Relied on Facts Recited in the Prior Appellate Opinion to Deny Suarez's Petition*

Suarez contends the trial court erred in multiple ways by denying his petition at the prima facie stage. He maintains the court improperly (1) engaged in its own factual finding that he was the shooter; (2) relied on this court's summary of the evidence on direct appeal; and (3) found, contrary to principles of issue preclusion, he was the actual shooter in the attempted murder counts after the jury found he did not personally use a firearm in those offenses, but only that a principal discharged a firearm.

Effective January 1, 2022, the Legislature limited a lower court's consideration of a prior appellate opinion to "the procedural history of the case recited." (§ 1172.6, subd. (d)(3), as amended by Stats. 2021, ch. 551.)

---

6 Once a petitioner makes a prima facie showing of entitlement to relief, " 'the court shall issue an order to show cause.' " (*Strong, supra*, 13 Cal.5th at p. 708.) It "must [then] hold an evidentiary hearing at which the prosecution bears the burden of proving, 'beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder' under state law as amended by Senate Bill [No.] 1437. [Citation.] 'A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' [Citation.] 'If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.' " (*Strong*, at p. 709; accord, *People v. Lewis, supra*, 11 Cal.5th at p. 960.)

While this limitation involves the court's consideration of evidence at a full-fledged section 1172.6 evidentiary hearing, there is no reason to conclude such evidence "could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988; see also *People v. Langi* (2022) 73 Cal.App.5th 972, 979-980 [trial court erred by treating statements in prior appellate opinion as conclusive as to whether the appellant was the actual killer].) To the extent the trial court relied on facts recited in this court's prior appellate opinion to determine Suarez was the actual perpetrator, it erred.

We need not further analyze Suarez's claims in depth, as the People concede error. They point out, as does Suarez, that in making its ruling the lower court in part relied on this court's opinion in *People v. Harden*, *supra*, 81 Cal.App.5th 45 before we granted rehearing and explained that law of the case cannot conclusively establish disentitlement to relief at the prima facie stage of a section 1172.6 proceeding. (*Id*. at p. 50.) The People also point out the court did not have the benefit of the California Supreme Court's decision in *Strong*, *supra*, 13 Cal.5th 698, that a true finding on a special circumstance under outdated law does not prevent a petitioner from making a prima facie showing sufficient for section 1172.6 relief. (*Strong*, at p. 720.) Thus, they agree the lower court "understandably erred" when it issued its ruling.

The People argue, however, that any error is harmless because Suarez is ineligible for relief as a matter of law. They argue the jury instructions show jurors were not instructed on the natural and probable consequences doctrine, and other instructions told the jury that to convict Suarez of attempted murder, it had to find he had the intent to kill. They point out the prosecutor reiterated those principles in closing arguments. According to the

14

People, the court's error is inconsequential because "the record of conviction demonstrates that [Suarez] was convicted of attempted murder 'either as a perpetrator or a direct aider and abettor, and not under the natural and probable consequences doctrine, or indeed any theory under which malice is imputed to a person based solely on that person's participation in a crime.' " They argue there can be no doubt the jurors determined Suarez acted with malice and did not convict him of attempted murder under a vicarious liability theory.

In reply, Suarez admits the jury was not instructed on the natural and probable consequences doctrine and the prosecutor did not argue the theory in closing arguments. However, he argues the portions of the record the People submitted to us on appeal are not dispositive; they do not establish as a matter of law that his jury did not rely on a natural and probable consequences theory of liability.[7] Suarez cites *People v. Langi, supra,* 73

_____

[7] Suarez surmises "it may be that during deliberations, the jury submitted a question to the trial court regarding aiding and abetting liability, to which the trial court responded by instructing on an additional and alternative natural and probable consequences theory of liability, which sometimes occurs. Or after the jury's verdicts, defense counsel may have spoken to the jurors, the jurors may have advised counsel that they convicted appellant on what amounted to a natural and probable consequences theory of liability based on their belief appellant at least intended to aid and abet in a shooting, defense counsel may have presented the same within a motion for new trial, and the trial court may have denied such motion based on the conclusion appellant suffered no prejudice in any event because a conviction under a natural and probable consequences theory was legally permissible at that time." We have reviewed the clerk's transcript of the prior appeal and have found no such jury questions. Nor does that record contain a motion for new trial. As stated below, it was Suarez's burden in any event to establish prejudice with an appropriate record.

15

Cal.App.5th 972 for the proposition that a court's denial of a section 1172.6 petition at the prima facie stage should be reversed where the record does not conclusively eliminate the possibility that the jury found the appellant guilty on a theory under which malice was imputed to him based solely on his participation in a crime. He maintains that whether there is any basis in the entire record to conclude he may have been convicted of attempted murder under a natural and probable consequences or other imputed malice theory is a question more appropriately addressed and resolved in the superior court in the first instance. Suarez further points out that in his prior direct appeal, he challenged the language of CALCRIM No. 600 on grounds it suggested to the jury that a direct but ineffective step toward killing another person "indicates a definite and unambiguous intent to kill," which the jury could have understood as telling them that a direct step satisfied both the separate actus reus and mens rea elements for attempted murder. Though this court rejected his instructional challenge on appeal on grounds it was not reasonably likely the jury applied the instruction in an impermissible manner (*People v. Suarez, supra*, D059907), Suarez suggests this court's holding does not eliminate the possibility that one or more jurors imputed malice to him based on his participation in the shooting. He asks that we remand the case for further proceedings on the merits of his petition.

---

Suarez argues the People's position that the jury convicted him of attempted murder as either the perpetrator or a direct aider and abettor was not discussed or litigated in the lower court. But the People should not be expected to raise an appellate harmless error argument before the lower court issued its ruling. We reject Suarez's suggestion that the People forfeited the point.

### III. *The Court's Error Was Harmless Under* Watson

We analyze a lower court's failure to follow section 1172.6's procedures for prejudice under the state law standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Lewis*, *supra*, 11 Cal.App.5th at pp. 973-974; accord, *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [applying standard to admission of evidence at section 1172.6 evidentiary hearing].) Under this standard, we ask whether " 'there is a reasonable probability that in the absence of the error [Suarez] would have obtained a more favorable result.' " (*People v. Lewis*, at p. 974.) More specifically, when the court errs by denying a section 1172.6 petition before issuance of an order to show cause, the petitioner seeking to demonstrate prejudice must show it is reasonably probable that, absent that error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972-974; *Watson*, at p. 836.)

We emphasize that it was Suarez's burden as the appellant to show prejudice. Despite having the benefit of *Lewis*, he did not attempt to do so in his opening appellate brief. To establish prejudice from error, it would have been incumbent on him to present us with any portions of the record of conviction establishing the jury could have convicted him of a now-invalid theory of aiding and abetting attempted murder. Though we elect to address Suarez's prejudice arguments made for the first time in his reply brief (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party"]; see *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114 [arguments raised for the first time in a reply brief are forfeited]), we conclude below they are unavailing.

Under the plain language of section 1172.6, a person convicted of attempted murder is eligible for relief only if that conviction was based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a) ["[a] person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced on any remaining counts"]; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 ["Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].) For harmless error purposes, the question is whether the record of conviction contains facts refuting a petitioner's allegations that he was convicted under that theory. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 971; *People v. Mejorado* (2022) 73 Cal.App.5th 562, 572 [error in failing to appoint counsel is harmless "if we can determine that the record of conviction ' " 'contain[s] facts refuting the allegations made in the petition' " ' "]; cf. *People v. Harden*, *supra*, 81 Cal.App.5th at pp. 47-48 [defendant ineligible as a matter of law where record "*conclusively* establish[ed]—with no factfinding, weighing of evidence, or credibility determinations" the jury convicted him on a still-valid theory of murder]; accord, *People v. Garcia* (2022) 82 Cal.App.5th 956, 969-971 [affirming denial of resentencing because record of conviction "unequivocally establishes" defendant was the sole perpetrator and actual killer].) Such can be shown when the jury instructions and verdicts refute any possibility that Suarez's jury convicted him of attempted murder under a natural and probable consequences theory. (Accord, *Harden*, *supra*, 81 Cal.App.5th at pp. 47-48; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676 [" '[J]ury instructions given at a petitioner's trial may provide "readily ascertainable facts from the record" that refute [a petitioner's prima facie

showing]' permitting a trial court to determine that a petitioner is not entitled to relief"].)

Here, the only theory on which Suarez's jury was instructed was either attempted murder as a direct perpetrator, or direct aiding and abetting of attempted murder, neither of which qualify for section 1172.6 relief. (See *People v. Cortes*, *supra*, 75 Cal.App.5th at pp. 205-206; *People v. Coley*, *supra*, 77 Cal.App.5th at p. 548 ["Direct aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775"].) Specifically, the trial court instructed the jury that Suarez could be convicted as either a perpetrator or an aider and abettor. It read CALCRIM Nos. 400 and 401 on direct aiding and abetting liability for the attempted murder. These instructions informed the jury that to convict Suarez as an aider and abettor, the prosecution had to prove he knew the perpetrator intended to commit a crime, that he intended to aid and abet the perpetrator in committing the crime, and that he in fact did aid and abet the perpetrator in committing the crime.[8] When these instructions are given, there is "no

---

[8] The court instructed the jury that "a person may be guilty of a crime in two ways"; that "he or she may have directly committed the crime" as the perpetrator, or "he or she may have aided and abetted a perpetrator who directly committed the crime." The court instructed: "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime the defendant intended to aid and abet the perpetrator in committing the crime; and 4. The defendant's words or conduct did, in fact, aid and abet the perpetrator's commission of the crime. Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime."

19

reasonable likelihood" jurors would have understood they allowed them to base Suarez's culpability for attempted murder from the mental state of the actual shooter, rather than on his own mental state in aiding and abetting the crime. (See *People v. Johnson* (2016) 62 Cal.4th 600, 640-641 [where CALCRIM Nos. 400 and 401 are provided, "there was no reasonable likelihood" the jurors would have understood the instructions "to allow them to base defendant's liability for first degree murder from the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing"].) The instructions correctly conveyed the principle that an aider and abettor's "mental state is her own; she is liable for her mens rea, not the other person's." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; accord, *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [under these principles " 'the person guilty of attempted murder as an aider and abettor must intend to kill' "].)

Where, as here, the jury instructions given did not permit the jury to convict Suarez of "attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)), Suarez is ineligible for relief under section 1172.6 as a matter of law. (*People v. Coley*, *supra*, 77 Cal.App.5th at p. 548 [defendant convicted of attempted murder not entitled to section 1172.6 relief because the jury was not instructed on the natural and probable consequences doctrine]; see also *People v. Estrada* (2022) 77 Cal.App.5th 941, 946 [jury instructions showed trial court never instructed the jury on the natural and probable consequences doctrine for first degree murder; summary denial of petition affirmed]; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily

20

denied"].)

We reject Suarez's arguments urging us to reach a contrary conclusion. As stated above, he points to the fact the People sought judicial notice only of the jury instructions, verdicts, and counsel's arguments, and speculates that other portions of the record might show jurors relied on a natural and probable consequences theory to convict him. But it was Suarez's burden to submit any portions of the record necessary to establish prejudice. In any event, in *People v. Harden*, *supra*, 81 Cal.App.5th 45, we rejected the notion that parts of the record of conviction such as a juror declaration in connection with a new trial motion might permit us to conclude a defendant was eligible for section 1172.6. relief in the face of jury instructions and verdicts establishing the contrary. We explained that even if we could consider the juror declaration, it did not assist the defendant: "The issue is not whether a juror could reasonably believe someone else might also be involved [in] or responsible [for a killing]. The question at the prima facie stage of the section [1172.6] analysis is whether, *as instructed*, it was possible for a juror to convict Harden of first degree felony murder as other than the actual killer." (*Harden*, at p. 54, fn. 7.) We held in *Harden* that the *instructions and verdicts* "irrefutably establish[ed] as a matter of law [the defendant] was the actual killer"; they showed the "only path to convicting [the defendant] of first degree felony murder with special circumstances and a personal-infliction-of-great-bodily-injury enhancement was based on a finding she actually killed [the victim]." (*Id.* at p. 56.) So it is here. The instructions and verdicts in this case permit us to say conclusively the jury did not convict Suarez on a theory of attempted murder based on the natural and probable consequences doctrine.

Nor are we convinced to reach a different conclusion by Suarez pointing to an isolated phrase in the attempted murder jury instructions—that "[a] direct step indicates a definite and unambiguous intent to kill"—to argue that it somehow permitted the jury to predicate his conviction on a theory imputing malice to him based on his participation in the shooting.[9] There are several flaws in this argument. First, it reiterates Suarez's claim of instructional error raised on his direct appeal, and section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error." (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438; *People v. Coley, supra*, 77 Cal.App.5th at p. 549 [section 1172.6 petition "is not a means by which a defendant can relitigate issues already decided"].) Further, as stated, the only theory of attempted murder that qualifies for section 1172.6 relief is attempted murder under the *natural and probable consequences doctrine*, not just any theory in which malice is imputed to Suarez. (§ 1172.6, subd. (a) [words "other theory under which malice is imputed to a person based solely on that person's participation in a crime" apply only to murder, not attempted murder]; *Coley*, at p. 548.) Thus, any asserted ambiguity or error in the jury instructions must permit a conclusion that the jury could have

9       The court instructed the jury that to prove Suarez guilty of attempted murder, the People had to prove "1. The defendant took at least one direct but ineffective step toward killing another person; and [¶] 2. The defendant intended to kill that person." The court continued: "A direct step requires more than merely planning or preparing to commit murder or obtaining or arranging for something needed to commit murder. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to kill. It is a direct movement toward the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt."

reasonably construed them to convict Suarez on a natural and probable consequences theory, not just any theory of imputed malice. (See *People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1267 [jury could have "reasonably construed [jury] instructions [for aiding and abetting an implied malice lying in wait murder] in a manner permitting it to convict appellant under a theory of imputed malice"].) Suarez does not meaningfully explain how that would be the case.[10] Finally, Suarez's "evaluation of how the jury might have interpreted the court's instructions does not take into account that we, the appellate court, 'must consider the instructions together as a whole, to determine whether it is reasonably likely a jury would interpret an instruction in a particular way, because we presume jurors understand and

---

[10] "[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense). [Citation.] A nontarget offense is the natural and probable consequence of a target offense 'if, judged objectively, the [nontarget] offense was reasonably foreseeable.' [Citation.] The accomplice need not actually foresee the nontarget offense. 'Rather, liability " 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' " ' " (*People v. Gentile* (2020) 10 Cal.5th 830, 843, abrogated in part on another ground by Stats. 2021, ch. 551, § 2, as stated in *People v. Williams* (2022) 86 Cal.App.5th 1244, 1254, fn. 9.) "Unlike direct aiding and abetting liability, culpability under the natural and probable consequences theory does not require an accomplice to share the direct perpetrator's intent. Instead, '[a]ider and abettor culpability under the natural and probable consequences doctrine is vicarious in nature' and ' "is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense" ' may not be intended at all." (*Gentile*, at p. 844; see also *People v. McCoy*, *supra*, 25 Cal.4th at p. 1117; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 385.)

correlate all of the instructions' [citation] and the jurors are 'presumed to have followed the court's instructions' [citation]." (*People v. Williams, supra,* 86 Cal.App.5th at pp. 1255-1256.)  Here, the instructions required the jury to find Suarez harbored the intent to aid and abet the attempted murders. Additionally, to convict Suarez of attempted murder, the jury was required to find he "intended to kill."

Suarez's reliance on *People v. Langi, supra,* 73 Cal.App.5th 972 does not assist him.  The defendant in *Langi* was convicted of second degree murder as an aider and abettor after participating with three other men in beating a man who died from head trauma after falling and hitting his head during the assault.  (*Id.* at pp. 975, 976-977.)  The jury in that case was not instructed on the natural and probable consequences doctrine but was given instructions both on aiding and abetting and second degree murder.  (*Id.* at pp. 975, 980-981.)

On appeal from the summary denial of defendant's section 1172.6 petition, the court in *Langi* determined that the aiding and abetting instruction (CALJIC No. 3.01) created an ambiguity in the context of second degree implied malice murder, which may allow the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*People v. Langi, supra,* 73 Cal.App.5th at p. 982.)  It observed that while the aiding and abetting instruction stated that a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage that crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Ibid.*)  Thus, it concluded, "[i]f the perpetrator need not have had 'murderous intent,' certainly the aider and

24

abettor need not have had such an intent. Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement." (*Id*. at pp. 982-983.) *Langi* held that in this situation, the ambiguity in the instructions allowed an aider and abettor to be found guilty simply for intending to aid the perpetrator's act, without personally and consciously disregarding the danger to human life. (*Id*. at p. 983.)

*People v. Langi, supra*, 73 Cal.App.5th 972 is inapposite. Suarez was convicted of attempted murder, not second degree or implied malice murder. His jury instructions did not include the second degree murder instruction that resulted in the ambiguity found in that case. In contrast to second degree implied malice murder, the perpetrator of an attempted murder must have the specific intent to unlawfully kill another human being. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890 [" 'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing' "]; see *Coley, supra*, 77 Cal.App.5th at pp. 547-548 [holding *Langi* inapplicable where the attempted murder conviction was based on jury instructions requiring intent to kill].) Because the aider and abettor to attempted murder shares the perpetrator's intent to kill, the possibility of imputing malice as *Langi* discussed is not present where the defendant is convicted of attempted murder as an aider and abettor.

In sum, Suarez is ineligible for resentencing as a matter of law. Accordingly, the court's error in denying his petition at the prima facie stage is harmless.

25

DISPOSITION

The order denying Suarez's section 1172.6 petition for resentencing is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

26